SCHAKE v. SIEM et al.

No. 43566.

Supreme Court of Missouri.

Division No. 1.

March 8, 1954.

Wm. Waye, Jr., St. Charles, for appellants.

B. H. Dyer, St. Charles, for respondent.

HOLLINGSWORTH, Judge.

This is an action to determine title to and for partition of several tracts of real estate in St. Charles County, Missouri. The case was tried upon an agreed statement of facts, in which it is stipulated that "the only issue in this case is the construction to be placed upon the * * * Last Will of Christian Siem, deceased, and the title thereunder of the Plaintiff Edwin S. Schake, and of Defendants, Walter Siem and Meta Emily Clay, to the real estate described." The principal question presented by this appeal is the nature and extent of the title devised by the will to plaintiff's deceased wife, Hedwig Schake, a daughter of testator.

Christian Siem died on April 14, 1920. Surviving him were his widow, Emilie, a married daughter, Hedwig Schake, a then unmarried son, Walter, and a then unmarried daughter, Meta. His will, admitted to probate in St. Charles County on the 23rd day of April, 1920, provided insofar as pertinent to the issues here involved:

"Second

"I will and bequeath to my beloved daughter, Hedwig Agnes Schaake, wife of Edwin Schaake, the sum of Two-hundred ($200.00) Dollars to be paid to her in cash. After the death of her mother, my beloved wife, Emilie Siem, the said Hedwig Agnes Schaake, shall inherit the farm, free from encumbrance of any nature, known as part of the Richard Sehnaath farm, acquired of Alma Schnaath, * * *"

[Here follows a description of that farm, a description of a 34.80 acre tract, and descriptions of two improved parcels of real estate in the town of Augusta, Missouri, to which town properties testator devised an undivided one-half interest to Hedwig.]

"Third

"I will and bequeath to my beloved son, Walter Julius Louis Siem, the sum of Two-hundred ($200.00) Dollars to be paid to him in cash. After the death of his mother, my beloved wife, Emilie Siem, the said Walter Julius Louis Siem shall inherit the farm known as the home place, free from all encumbrance of any nature, * * *"

[Here follows a description of that farm, a description of a seven acre tract, and a description of a fourteen acre tract.]

"Fourth

"I will and bequeath to my beloved daughter, Meta Emily Siem the sum of Two-hundred ($200.00) Dollars to be paid her in cash. After the death of her mother, by beloved wife, Emilie Siem, the said Meta Emily Siem shall inherit the farm, free from encumbrance of any nature, known as the Fritz Fuhr farm, * * *"

[Here follows a description of that farm, and descriptions of the two improved parcels of real estate in the town of Augusta, Missouri, described in the devise to Hedwig, to which town properties testator devised the remaining undivided one-half interest to Meta.]

"Fifth

"It is my wish that should any of my three children die after the death of their mother, that the farm and other real property to each herein bequeathed be equally divided between those surviving, provided, however, only in the event that the heir so dying be not married or have issue; then the law and not my wish must prevail, and

"Sixth

"I will and bequeath to my beloved wife, Emilie Siem all the Estate; real, personal and mixed of whatsoever kind and nature of which I am now possessed or may during my life and be possessed of at my death, wheresoever the same may be situated, to

have and to hold the same for her sole bene-fit and use; with right and privilege to buy and sell any of the real property, excepting the lands and town properties bequeathed to our children after her death, as stated in paragraphs two, three and four, during her life, and at her death the residue be divided in equal parts between our children then living and their legal heirs, * * *."

Both Walter and Meta married subsequent to the death of testator and both have issue. Testator's widow, Emilie, died intestate on March 5, 1946. Hedwig Schake died intestate and without issue on March 23, 1948, survived by her husband, Edwin S. Schake, plaintiff herein. At the time of Hedwig's death, she was possessed of the property described in item two of the will and an undivided one-third interest in two other tracts which had come to her under item six. Plaintiff elected to take an undivided one-half interest in all property owned by his wife, Hedwig, and brought this action against Walter and Meta, joining their respective spouses as parties defendant. He alleged fee simple title to an undivided one-half interest in all property devised to Hedwig under the items two and six of the will. Walter and Meta denied he had any title to said lands and asserted title to be in themselves as tenants in common under the provisions of said will. The trial court found the issues in favor of plaintiff and defendants appealed.

(Subsequent to the appeal, Walter died. Upon motion of defendants, his executor, Harvey Siem, his widow, Edna Siem, and his children, Harvey Siem, Marvin Siem and Viola Siem, all of whom are adults and the sole beneficiaries of his estate, have been substituted as parties defendant in his stead.)

■ The disposition of this case depends upon the intent, meaning and legal effect of the second, sixth and fifth items of the will. To determine testator's intent, we examine the whole will, giving effect to each and every provision thereof, if ascertainable and not contrary to public policy or established rules of law. Vaughan v. Compton, 361 Mo. 467, 235 S.W.2d 328,

330; Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23. Inasmuch as only the title to the property devised to Hedwig is involved in this action, we shall deal only with the provisions of the will relating to it, looking, however, to all of the provisions to ascertain if they shed any light upon the issues presented as to the extent and nature of the title devised to her.

In the second item testator declares that after the death of Hedwig's mother, Hedwig "shall inherit, free from encumbrance of any nature" the property therein described. He used the identical phraseology in the devises made to Walter in the third item and to Meta in the fourth item. Appellants forthrightly concede that, subject to a life estate in the mother, item two devises to Hedwig the fee in the property therein described. But they say this was later cut down in item five. They contend item five postponed vesting of the fee until the contingency stated therein became determinable upon Hedwig's death, and that when Hedwig died without issue the fee vested in Walter and Meta under the provisions of item five and not as Hedwig's heirs, in which latter instance the rights of Hedwig's surviving husband would attach to the property by operation of law.

■ Undoubtedly, a testator may postpone the vesting of title to await a future contingency and such a provision will be enforced, so that title will then vest as the testator directs. Thompson v. Thompson, Mo.Sup., 175 S.W.2d 885, 888. But the law favors vested remainders, and unless the testator has very clearly expressed an intention to the contrary the courts will construe the remainder to vest upon his death, rather than as being postponed until the death of the first taker. Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, 950; Legg v. Wagner, Mo.Sup., 155 S.W.2d 146, 147, 148; Miller v. Kriner, Mo.Sup., 247 S.W.2d 757, 761.

■ By item two of the will, testator declared that after the death of her mother, Hedwig "shall inherit (the property here in question), free from encumbrance of any

nature". While these are not the words usually employed in devising a fee, yet their meaning is clear. We think there can be no doubt that testator intended Hedwig to take title in fee upon his death, subject only to the life estate of his wife. Item six of his will confirms this conclusion. It specifically gives testator's wife the privilege of disposition of all properties of which he died seized except the properties devised to his children in items two, three and four. Thus he says, in effect, "My wife may dispose of all of my property except that which I have heretofore devised in fee to my three children in items two, three and four." So concluding, we have next to determine whether the fee simple title so clearly conveyed to Hedwig in item two is cut down by the "wish" expressed in item five. The rule is that the unconditional devise of the fee to Hedwig in item two can be cut down only by an express declaration to that effect or by the use of language necessarily implying such a purpose from words equally as clear as those creating the fee. Vaughan v. Compton, 361 Mo. 467, 235 S.W.2d 328, 332; Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 24; Brownell v. Raubenheimer, D.C,N.Y., 112 F.Supp. 154, 155.

Appellants contend the words, "It is my wish", used by testator in item five, express more than a mere hope and, in effect, amount to a direction that the property devised to Hedwig shall go to testator's surviving children if Hedwig die unmarried and without issue surviving her. They rely strongly upon English v. Ragsdale, 347 Mo. 431, 147 S.W.2d 653. That case was decided upon its own peculiar facts and is not controlling here. In Housman v. Lewellen, supra, 244 S.W.2d 21, 26, we had occasion to say of the holding in the English case: "Except for the fact that that decision is based upon the peculiar situation and specific words used in the Phillips' will, the case of English v. Ragsdale, supra, would appear to be out of line with settled rules of construction and the weight of authority." When we contrast the meaning of the strong and thrice stated language used by testator in devising to each of his children the respective properties described in items two, three and four, with the language, "It is my wish", used in item five, we are of the opinion the latter phrase does not expressly or by necessary implication cut down the fee devised to Hedwig in item two.

Furthermore, even though testator may have believed that after intentionally devising the fee to Hedwig, he could thereafter, in the event she still owned the land at her death after the death of her mother and was then without living issue, devise it to his other children, yet it is readily apparent he could not do so. Having intentionally devised the fee to her, all power of directing any further disposition of the property was at an end. Vaughan v. Compton, supra, 235 S.W.2d 328, 332; Housman v. Lewellen, supra, 244 S.W.2d 21, 25.

In item six, testator devised to his wife a life estate (with power of disposal) in the residue of his estate, with remainder over to the children surviving her or their heirs. She died without having disposed of two tracts of the real estate involved in this suit. All three of the children survived her. Hence, Hedwig became invested with the fee to an undivided interest in the two tracts upon the death of her mother. It seems clear that the placement of item five immediately following items two, three and four, rather than following the provisions of item six, evinces an intent to limit the provisions of item five to the preceding items two, three and four. But, if testator did intend item five to also apply to item six, it nevertheless was ineffective for the reasons hereinabove stated.

Appellants further contend that there was no administration on the estate of Hedwig Schake and that plaintiff could not elect to take a one-half interest in her real estate subject to the payment of her debts as provided in Sections 469.020, 469.090 and 469.120, RSMo 1949, V.A.M.S. The agreed statement of facts shows that Hedwig and her plaintiff husband resided in Wayne County, Missouri, at the time of her death on March 23, 1948, and that thereafter on September 9, 1948, he executed and ac-

knowledged his deed of election which was filed in the probate court of Wayne County on the same day and in the recorder's office of that county on September 13, 1948, and that thereafter a duly executed and acknowledged original duplicate thereof was filed in the recorder's office of St. Charles County, Missouri, on September 15, 1948, and in the probate court of St. Charles County on September 20, 1948. Appellants say plaintiff could not elect to take under the provisions of § 469.020 until letters of administration had been granted upon his deceased wife's estate, for the reason that § 469.120 requires that the deed of election shall be filed within twelve months after the first publication of notice of granting the same.

The only after-trial motion filed in this case, to wit: defendants' motion to set aside the judgment, does not mention this point and it is not before us. However, the identical point made by appellants was flatly rejected by this court in the case of Landis v. Hawkins, 290 Mo. 163, 234 S.W. 827. Appellants say the decision in that case is unsound and should not be followed, but we must decline to pursue the matter by way of obiter dictum.

The judgment is affirmed.

All concur.